The mother appeals from the modification of custodial provisions of a divorce decree.
The original decree, rendered by Jefferson County Circuit Court, Bessemer Division in 1972, granted custody of the three minor children to the mother. The father was ordered to pay $160 per month child support and pay medical bills and maintain hospital insurance for the children. The decree forbade either party from removing the children from the state without the consent of the other.
Shortly after the divorce the parties resumed living together. They separated again in January 1974. Subsequently there were difficulties between the parties. The wife filed petition for citation for contempt for failure to pay support. She charged harassment, including assault with a gun. She was harassed at her employment and lost her job. The father was convicted of assault and battery. He was found to be in arrears over $600 in support, but was given custody of the children for the summer of 1974. The mother stated she had to leave the state to obtain employment because the father would not leave her alone. She went to Ohio. In September 1974 she returned to Alabama. She got her children and returned to Ohio without permission of the court. The father did not learn of her whereabouts until June of 1977.
The mother became pregnant and married in 1976 in Akron, Ohio. Her new husband is a black dentist. He provided the mother and the children with a large home in Akron and supported them together with the new child. The children like him and they have a good relationship. *Page 1007 
In June 1977 the father learned where the children were located. He secured an ex parte order for custody from the Jefferson County Court and went to Ohio. He sought the assistance of the Ohio authorities. When he went to the home with Ohio officers, the mother shot at him as he sat in the car. She was charged for this offense, but the charges were later dropped. The Ohio court gave custody of the children to the father for the summer of 1977, with direction to return them to Ohio in August. There was to be a determination of custody thereafter subsequent to investigation of each party. Instead of returning the children to Ohio as ordered, the father filed petition for custody in Jefferson County. The resulting grant of custody to the father brought this appeal from the mother.
The first issue presented is whether the father may be granted the relief of modification when he has been found to be in arrears in support for the children. We are cited to our case of Cox v. Cox, 48 Ala. App. 574, 266 So.2d 784 (1972). That case does not deny the court power to enter an order affecting the welfare of the children merely because the father is behind in support payments. Such a rule would conflict with the principle that the welfare of the children is the polestar in every custody case. Dorminy v. Dorminy, 51 Ala. App. 70,282 So.2d 686 (1973).
The next issue is whether the evidence discloses a material change of circumstances affecting the welfare of the children which supports a change of custody. There is presented the companion issue of whether the interracial marriage of the mother was the reason for the change in custody. It is necessary to the consideration of these issues that we examine the testimony closely. We have already related some matters and events occurring between the decree granting custody to the mother and the filing of the petition of the father for custody. We will relate other evidence.
After going to Ohio, the mother found employment and also secured training and experience as a dental assistant. It was while employed in that capacity she met her present husband. She brought her children to Ohio, enrolled them in school and supported them for over two and one-half years without aid from their father. Her present husband purchased a large home and located her and her children there prior to the marriage. There is now a son of that marriage. The husband and stepfather earned over $56,000 in 1977 and testified he is desirous of supporting the wife and her children. Neighbors from Ohio appeared and testified as to the home and treatment of the children. There was evidence that the interracial marriage had encountered no societal problems in Ohio.
The sister of the mother had visited in the house and stated the mother and children were in better circumstances than they had ever known.
The father is self-employed as a landscape contractor. He has remarried. His present wife has two children whom he supports. His income is apparently sufficient to support his children and step-children. They reside in a three-bedroom trailer located in a rural area. There was no evidence but that the children received good treatment in his home.
During the summer prior to the hearing and decree, the children were permitted to talk with their mother by phone with the father listening in and on occasion taping the conversation. Because he felt the mother's calls were becoming too numerous and were upsetting the children, he ceased permitting them. The conversations were taped by the father to show how the mother attempted to influence the children to tell an investigator they wanted to be with her. The tapes did show such attempt to influence. They also showed plainly the strong bond of mutual love between the mother and the children and their good rapport. They also showed an affectionate relationship with the mother's present husband. The tapes also revealed the desire of the children to be with their mother even though they knew the father was listening to the conversation. This desire was subsequently expressed to the court in camera. The trial court went to considerable length *Page 1008 
in an amendment to its original finding of fact to state its conclusion that the children's statements that they wished to go to Ohio were due to the inducements and importuning of the mother and not their true feelings. The court noted that the children gave no indication of abuse or unfitness of the father but only expressed a desire to go to Ohio. The court then said that the interview with the children inclined it to the conclusion that their best interest would be served in the custody of the father.
We have said that the mother charges that the primary circumstance causing the court to remove the children from her custody and give them to the father was her interracial marriage. We have examined the record closely and there is no overt evidence that the charge is true. The husband appeared and testified. He was treated courteously by the court and with remarkable restraint by counsel. The only prejudice because of race was displayed by statements of the father. However, candor requires the question of whether the trial court would have been so persuaded if the mother were married to a caucasian dentist with an income of $56,000 per year. An answer to the question can come only from surmise and speculation. For this court to speculate affirmatively would be contrary to our duty of review and dishonor the trial judge without sufficient proof.
It is our duty to review every judgment of a trial court rendered after oral hearing with the presumption of correctness. We are free to reverse such judgment only when it is unsupported by legal evidence or it is clearly wrong and unjust. Sheffield v. Sheffield, 350 So.2d 1056 (Ala.Civ.App. 1977). This court is not at liberty to set aside the judgment of the trial court merely because we might have decided differently had we been sitting as the trial judge. Northcuttv. Northcutt, 45 Ala. App. 646, 235 So.2d 896 (1970). We cannot say in this case that the judgment of the court changing the primary custody of these children from the mother to the father is so without support by the evidence as to require reversal. However, we do find the complete removal from the mother of any custodial right other than visitation to be wrong and unjust. We therefore approve and affirm the granting of primary custody to the father, but reverse the judgment insofar as it grants mere right of visitation to the mother. We direct that the mother be granted custody from the end of the school term in the spring to a date two weeks in advance of the beginning of the school term in the fall. The cost of transportation in the spring is to be paid by the mother. The cost of return transportation in the fall is to be paid by the father. All other provisions of the judgment are to remain in effect.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.